STATE of Iowa, Appellee,

v.

Bennie Jeanne Berkley FARBER,
Appellant.

No. 65301.

Supreme Court of Iowa.

Jan. 20, 1982.

Larry J. O'Connor, P. C., Waterloo, for
appellant.

Thomas J. Miller, Atty. Gen., John P.
Messina, Asst. Atty. Gen., David H. Correll,
Black Hawk County Atty., and Larry L.

Anfinson, Asst. Black Hawk County Atty., for appellee.

McCORMICK, Justice.

Defendant Bennie Jean Berkley Farber appeals from her conviction and sentence for possession of a controlled substance in violation of section 204.401(3), The Code. She alleges the trial court erred in overruling her pretrial motion to suppress evidence of drugs and drug paraphernalia seized in a search of her apartment pursuant to warrant. She contends the warrant was neither validly issued nor lawfully executed. Because we find no merit in either contention, we affirm the trial court.

The search warrant in this case was issued by Magistrate George L. Stigler, now a district associate judge. The motion to suppress was heard by Judge Forest E. Eastman. After Judge Eastman overruled the motion, the case was tried on stipulated facts to Magistrate Stigler, with jury waived. Defendant was convicted and fined $100. This appeal followed.

The evidence in the suppression hearing came from testimony of defendant, her estranged husband Steven Craig Farber, and a friend of defendant. We review the record de novo. *State v. District Court*, 247 N.W.2d 241, 245 (Iowa 1976). It shows defendant was the sole occupant of the Waterloo apartment involved. She and her husband were separated. On February 18, 1980, however, the husband entered the apartment and observed drugs and drug paraphernalia. At approximately 6:45 p.m. on February 20, 1980, he related his observations to a detective in the sheriff's department. Shortly thereafter the deputy applied to Magistrate Stigler for a warrant to search the apartment. The application was supported by the detective's affidavit reciting the information provided by defendant's husband. The husband also testified before the magistrate.

The warrant was executed during the same evening it was issued. The record does not disclose how or exactly when the apartment was entered. It does show that at approximately 10:00 p.m. two officers approached defendant at her place of employment in Waterloo, notified her of the warrant, and transported her to her apartment. When they arrived, defendant discovered that three other officers had completed the search. The apartment door was open, and the three officers were in her living room with the confiscated material. She was then arrested and subsequently charged.

Defendant preserved error in the suppression hearing on her present contentions. She asserts the warrant was invalidly issued because her husband was disqualified under section 622.7 from providing information for the warrant. She alleges it was unlawfully executed because the officers violated section 808.6, the knock and announce statute.

I. *Issuance of the warrant.* In material part, section 622.7 provides: "Neither the husband nor wife shall in any case be a witness against the other . . . ." We have recognized that subject to enumerated exceptions this statute disqualifies one spouse from being used against the other at trial. *See State v. Pepples*, 250 N.W.2d 390, 394 (Iowa 1977). We have also held it applies to grand jury proceedings. *See State v. Henderson*, 268 N.W.2d 173, 178 (Iowa 1978).

We have not had occasion to decide whether the statute bars testimony by one spouse in support of issuance of a search warrant against property of the other. We have held, however, that it does not bar third party testimony concerning the spouse's out-of-court statements. *See Pepples*, 250 N.W.2d at 394. This means the statute does not preclude third party use of information from one spouse to obtain a search warrant for the other spouse's property. *See United States v. Lefkowitz*, 618 F.2d 1313, 1318 (9th Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980); *State v. Osborne*, 18 Wash.App. 318, 322, 569 P.2d 1176, 1180 (1977).

Probable cause for issuance of a search warrant may be based on evidence which would be inadmissible at trial, includ-

ing hearsay. *State v. King*, 256 N.W.2d 1, 8 (Iowa 1977). Therefore, if section 622.7 barred spousal testimony in support of a warrant application, the same information presumably could be presented through a third person. The possibility of this anomalous result points up the unlikelihood that the statute was intended to apply to issuance of a search warrant in the first place.

■ The statute precludes adverse spousal testimony in a "case." A search warrant proceeding, however, is independent of any criminal case. It is ex parte and nonadversary. Moreover, the warrant is an investigative aid. At common law the privilege did not prevent officers from obtaining information from one spouse to assist in an investigation of the other. *See Trammel v. United States*, 445 U.S. 40, 52 n.12, 100 S.Ct. 906, 913, 63 L.Ed.2d 186, 196 (1980); *State v. Aaron*, 29 N.C.App. 582, 225 S.E.2d 117, *review denied*, 290 N.C. 603, 228 S.E.2d 455 (1976), *cert. denied*, 430 U.S. 908, 97 S.Ct. 1180, 51 L.Ed.2d 585 (1977).

We have recognized the statute applies in grand jury investigations of specific charges. *See State v. Smith*, 215 Iowa 374, 245 N.W. 309 (1932); *Molyneaux v. Wilcockson*, 157 Iowa 39, 137 N.W. 1016 (1912). The issue in a grand jury inquiry is much different than in a search warrant proceeding. It concerns the sufficiency of evidence to indict rather than sufficiency of evidence to conduct a search. An indictment is a prelude to a trial, whereas a search is investigatory. In addition, the potential compulsion of a subpoena is present in the grand jury setting but is unlikely to be involved in issuance of a search warrant.

Section 622.7 derogates the fundamental public right to every person's evidence. *See Trammel*, 445 U.S. at 50, 100 S.Ct. at 912, 63 L.Ed.2d at 195. The privilege has been called "the merest anachronism in legal theory and an indefensible obstruction to truth in practice." VIII J. Wigmore, *Evidence* § 228 at 221 (McNaughten rev. 1961). Even though we must apply the statute in accordance with its terms, we will not extend it by construction. *Henderson*, 268

N.W.2d at 178. Consequently, we hold it does not apply to an application for search warrant. *Accord, Osborne*, 18 Wash.App. at 322, 569 P.2d at 1180. We do not believe the proceeding on a search warrant application is a "case" within the meaning of section 622.7.

Therefore the trial court did not err in overruling defendant's attack on the issuance of the warrant.

■ II. *Execution of the warrant.* This is the first case in which we have been asked to construe the knock and announce statute since the 1978 criminal code revision. In material part, section 808.6 provides:

> The officer may break into any structure or vehicle where reasonably necessary to execute the warrant if, after notice of [his] authority and purpose the officer's admittance has not been immediately authorized. The officer may use reasonable force to enter a structure or vehicle to execute a search warrant without notice of the officer's authority and purpose in the case of vacated or abandoned structures or vehicles.

Defendant contends this statute was violated because the officers executed the search warrant in her absence. She argues that forcible execution of a warrant is authorized by the statute only when it is "reasonably necessary." Defendant maintains that forcible entry is reasonably necessary only if exigent circumstances exist. Because two officers were able to locate her at her job while three other officers were conducting the search, she alleges they knew where she was when they commenced the search. On this basis she asserts she should have been given the opportunity to admit the officers voluntarily. Because the search was made pursuant to warrant, defendant had the burden of proof in the suppression hearing. *See State v. Shephard*, 255 Iowa 1218, 1222, 124 N.W.2d 712, 714–15 (1963).

This case does not present a situation in which officers wait until a person leaves the premises so they can conduct a search in the

person's absence. The warrant was executed a short time after it was issued. Nor does the record establish that the officers knew where defendant was when they commenced the search. The fact they found her does not prove they knew she could be found. It proves only that they knew where to look. Even assuming the officers knew she would not be home, however, section 808.6 was not violated unless the statute requires officers executing a search warrant to make some effort to locate an absent occupant of premises and seek permission to enter before entering in the person's absence. No such requirement is expressed in the statute. If it exists, it must be found by implication.

Before the 1978 revision, the knock and announce provision was in section 751.9, The Code 1977, which provided:

> The officer may break open any outer or inner door or window of a house, or any part thereof, of anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance.

This statute has been part of our law since 1851. It incorporated a requirement recognized at common law. *State v. Brown*, 253 N.W.2d 601, 602 (Iowa 1977). Because of its common law origin, we held that section 751.9 was subject to the interpretations and exceptions recognized at common law. *Id.* at 602–04. We also held that federal cases interpreting the comparable federal statute, 18 U.S.C. section 3109, were persuasive authority in interpreting our prior statute. *Id.* at 603; *see State v. Iverson*, 272 N.W.2d 1, 5 (Iowa 1978).

No court in any reported decision appears to have held that a knock and announce statute incorporating the common law concept will bar a search when no one is present in the premises to be searched. Knock and announce statutes have uniformly been interpreted to allow forced entry when the resident is absent:

> Should it become necessary, as where he is refused admittance after proper demand or announcement, the executing officer may break and enter the premises

and seize the property; but the provision of a statute that officers executing a search warrant may break doors or windows, if after notice of their authority they are refused admission, does not prevent officers executing a warrant from forcing an entrance into a house without notice, and without first demanding admittance, where the house is at the time unoccupied.

79 C.J.S. *Searches and Seizures* § 83 at 906 (1952) (footnotes omitted). The situation is the same whether the absence of a person from the premises is temporary or permanent:

> The peace officers must make the demand and announcement and be refused admittance, either overtly or by implication before they may break the door down, or enter the premises by force. However, when the executing officers, having a search warrant in their possession, come upon the premises and find the same unoccupied, it is an empty gesture for them to attempt to give notice of their authority and purpose... In such event, the same rule of law obtains as in the case where the house is abandoned, vacated or deserted, namely, that the officers may enter a dwelling forcibly without first demanding admittance, where there is no one present upon whom notice or demand may be made.

1 J. Varon, *Searches, Seizures and Immunities* 555 (2d ed. 1974) (footnotes omitted).

Courts in other jurisdictions with statutes which codify the common law have uniformly rejected the contention that an effort must be made to locate and bring an absent occupant to the premises before the entry can be made. *See Payne v. United States*, 508 F.2d 1391, 1393–94 (5th Cir. 1975); *United States v. Gervato*, 474 F.2d 40, 44 (3d Cir.), *cert. denied*, 414 U.S. 864, 94 S.Ct. 39, 38 L.Ed.2d 84 (1973); *Diamond v. State*, 363 So.2d 109 (Ala.Cr.App.1978); *People v. Peck*, 38 Cal.App.3d 993, 113 Cal. Rptr. 806 (1974); *Kraft v. State*, 19 Md. App. 108, 309 A.2d 643 (1973); *State v. Gutierrez*, 91 N.M. 542, 548–49, 577 P.2d 440, 447 (1978), overruled in part on other

grounds, *State v. Cervantes*, 92 N.M. 643, 593 P.2d 478 (1979); *State v. Wilson*, 41 Ohio App.2d 240, 325 N.E.2d 249 (1974); *Commonwealth v. Harris*, 479 Pa. 343, 388 A.2d 688 (1978).

The decisive issue is thus whether section 808.6 adds a requirement which was not imposed at common law or by the statute we had for 127 years in Iowa, and which has not been imposed in any other jurisdiction.

We have repeatedly recognized that the 1978 criminal law revision was primarily a restatement of prior law. *See, e.g., Emery v. Fenton*, 266 N.W.2d 6, 8 (Iowa 1978). Changes made during the course of the revision are not to be construed as altering the law unless the legislature's intent to do so is "clear and unmistakable." *Id.* at 10. Moreover, "[a]n intent to make a change does not exist when the revised statute is merely susceptible to two constructions." *Id.* Before the revision, an officer could break into the premises when his admittance was not promptly authorized as well as when he was refused admittance. He could break into them without knocking or announcing in exigent circumstances. *Brown*, 253 N.W.2d at 604–05. Without violating the statute, he could also enter by ruse. *Iverson*, 272 N.W.2d at 6. Furthermore, in accordance with unanimous authority, he had a right to break into the premises even in the merely temporary absence of the occupant.

Nothing in the statute's history or language establishes a "clear and unmistakable" legislative intent to change the law by imposing the additional requirement that an effort must be made to find and seek permission to enter from an absent occupant before the search warrant can be executed.

Instead, it appears the legislature simply codified former sections 751.9 and 751.10 in the first sentence of section 808.6. The second sentence was added "to clear up the question of notice before entering a vacated or abandoned building." 4 J. Yeager & R. Carlson, *Iowa Practice: Criminal Law and Procedure* § 894 at 190 (1979). The language is based on New York's knock and announce statute. *Id.* at 191. New York courts have consistently held that "[t]he demand for admittance and the giving notice of authority and purpose required by the statute presupposes the presence of a human being in the premises." *People v. Johnson*, 231 N.Y.S.2d 689, 691 (N.Y.Gen. Sess.1962), *aff'd*, 19 A.D.2d 946, 245 N.Y. S.2d 311 (1963). The New York statute does not require the officers before entering to "go through the futile gesture of giving notice to an empty house." *People v. Law*, 55 Misc.2d 1075, 1078, 287 N.Y.S.2d 565, 569 (1968).

Thus the first sentence of section 808.6 is merely a restatement of prior law, and the second sentence is a clarification which codifies the common law rule that the knock and announce requirement allows an entry by reasonable force without knocking and announcing when notice would be futile. Under this construction of section 808.6, it does not matter which sentence of the statute is applicable when the occupant is only temporarily absent. Neither sentence bars entry in that situation. The statute is subject to the same common law interpretations and exceptions as before. The second sentence states one exception but not the only one.

Nothing in the language of the statute compels a contrary conclusion. The statute authorizes an officer to break into premises when reasonably necessary after notice and nonadmittance. The only notice which is prescribed is "notice of [his] authority and purpose." This is the traditional knock and announce requirement. No other method of communicating with the occupant is mentioned. The "reasonably necessary" language modifies the authority to enter the premises forcibly.

The traditional purposes of the knock and announce requirement are to avoid property damage resulting from forcible entry, to prevent violence and personal injury, and to protect the privacy of occupants. *See Payne*, 508 F.2d at 1393–94, 2 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.8(a) at 124–25

(1978). None of these purposes affects the right of peaceful entry when the occupant is absent. Other courts have refused to read into such statutes a purpose to require the presence of occupants to protect them against possible police abuse of their property during the course of the search itself. *See Gervato*, 474 F.2d at 43–45; 2 W. La-Fave, *supra*, at § 4.7(c).

Viewed in this light, section 808.6 is susceptible to a reasonable construction consistent with its predecessor. The statute applies even when peaceful entry is possible, but this does not make force irrelevant. If the officer can enter through an unlocked door or with a passkey, it would not be reasonably necessary to break in. Various forms of peaceful entry are the legal equivalent of a breaking, but an actual breaking is authorized only when reasonably necessary. We conclude that the legislature intended by the new language in the first sentence of section 808.6 to minimize the use of force by an officer who has knocked but not been admitted. The second sentence of the statute constitutes a similar limitation when the premises are vacated or abandoned.

Nevertheless, the statute does not require the officer in any circumstances to attempt to locate or bring an absent owner to the premises as an alternative to peaceful or forcible entry. Because that requirement was not imposed at common law, we do not presume our legislature intended to impose it in a statute which codifies and is susceptible to a reasonable construction consistent with common law. Officers should be encouraged to search premises when an occupant is present. *See State v. Jacques*, 2 Kan.App. 277, 579 P.2d 146 (1978). Their failure to do so, however, does not violate section 808.6.

We hold that the trial court did not err in overruling defendant's motion on the section 808.6 ground.

AFFIRMED.

All Justices concur except ALLBEE, Le-GRAND and McGIVERIN, JJ., who concur in part and dissent in part, and UHLEN-HOPP, J., who dissents.

ALLBEE, Justice (concurring in division I and dissenting from division II and the result).

While I concur in division I relating to the issuance of the search warrant, I dissent from division II. I would reverse defendant's conviction on the ground that the search warrant was unlawfully executed in violation of section 808.6, The Code 1979.

Some factual background will aid in understanding this case. In February 1980, Steven Farber, defendant's estranged husband, entered defendant's Waterloo apartment through the use of a duplicate key. This entry, in violation of a restraining order issued after defendant had filed a petition for dissolution of the marriage, was made without defendant's knowledge or consent. Steven Farber allegedly observed various drugs and drug paraphernalia in the apartment. He reported this observation to a detective in the Black Hawk County Sheriff's Department. As a result, a search warrant was issued for defendant's apartment.

Shortly thereafter, three officers from the sheriff's department went to defendant's apartment to conduct the search. At that time, defendant was at her place of employment, also in Waterloo. Two other members of the department were dispatched to defendant's place of employment, where they read her the warrant and then transported her to the apartment. When they arrived with defendant at her apartment, the other officers had already entered and completed the search. A small quantity of marijuana, and other items later determined to be non-narcotic, had been discovered and confiscated. Defendant was subsequently placed under arrest and charged with possession of a controlled substance.

Forcible entry in the execution of search warrants is expressly authorized by section 808.6, which states in pertinent part:

The officer may break into any structure or vehicle *where reasonably necessary to execute the warrant* if, after notice of

this [*sic*] authority and purpose the officer's admittance has not been immediately authorized. The officer may use reasonable force to enter a structure or vehicle to execute a search warrant without notice of the officer's authority and purpose in the case of vacated or abandoned structures or vehicles.

(Emphasis added.) I do not believe that defendant's apartment, which she had left only temporarily to go to work, was either "vacated" or "abandoned" within the meaning of this section. According to their ordinary dictionary meanings, neither of those words denotes a temporary absence. Webster's New Collegiate Dictionary 1, 1290 (1976). "Vacate" means "to move out; . . . to cease from occupancy." Black's Law Dictionary 1388 (5th ed. 1979). "Abandon" means "[t]o desert, surrender, forsake . . . [t]o relinquish or give up with intent of never again resuming one's right or interest." *Id.* at 2. Defendant had neither moved out of her apartment nor abandoned it. *See also* 1 J. Varon, *Searches, Seizures and Immunities* 555 (2d ed. 1974) (using phrase "abandoned, vacated or deserted" to refer to permanent absence of occupants, in discussion of forcible entry statutes).

Because defendant's apartment was neither "vacated" nor "abandoned," the first sentence of section 808.6 is applicable here. Forcible entry is authorized by the first sentence only "where reasonably necessary to execute the warrant." § 808.6. This language was not present in the pre-1978 version of Iowa's forcible entry statute. *See* § 751.9, The Code 1977. I believe the addition of the "reasonably necessary" language signifies that the legislature did not intend to give peace officers a *carte blanche* to forcibly enter premises in *every* circumstance where admittance has not been immediately authorized by an occupant. Rather, there must be a reasonable degree of necessity shown to justify such entry.

Section 808.6 says that an officer "may break into any structure or vehicle where reasonably necessary to execute the warrant." The majority concludes that the phrase "where reasonably necessary to exe-

cute the warrant" refers only to the necessity of using actual force, and is aimed at situations where it would not be necessary to "break in" because a door is unlocked or a key is available to the police. It is well settled, however, that the word "break" in a forcible entry statute refers not only to situations involving violent force, but also to the mere opening of a closed but unlocked door, or of a locked door with the use of a key. *Sabbath v. United States*, 391 U.S. 585, 589–90, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828, 833–34 (1968); W. LaFave, *Search and Seizure* § 4.8(b) at 125–26 (1978); 1 J. Varon, *supra*, at 553. Therefore, it follows that the "reasonably necessary" language of section 808.6 refers to the necessity of *any* entry unauthorized by the occupant of the premises, not just to the necessity of using potentially property-damaging force. Had the latter construction been intended by the legislature, I believe it would have used the phrase "reasonable force," as it did in the second sentence of section 808.6 relating to vacated or abandoned premises, or, alternatively, would have said that officers "may break into any structure or vehicle, *using actual force* where reasonably necessary to execute the warrant."

The question before us, then, is whether it was "reasonably necessary" under the facts of this case for the officers to "break into" defendant's apartment in order to execute the warrant. I would hold that it was not. From the circumstances shown, it can be inferred that the officers knew exactly where defendant was at the time they began the search. Moreover, they knew she was at work, at a fixed location in the same community as the premises to be searched. The distance was not great, and there was no other obstacle to bringing defendant promptly to her apartment. Furthermore, enough officers were on hand so that some could watch the premises while others went to get defendant. Finally, there were no circumstances indicating the success of the search might be endangered by waiting for defendant's arrival.

Under the particular facts of this case, I believe the officers should have obtained defendant's presence before beginning the search, thus giving her an opportunity to grant peaceable entry. The ready availability of this simple measure obviated any necessity for breaking into defendant's apartment.

The holding I propose is a narrow one. I do not mean to suggest that officers may never enter a dwelling in the absence of its occupants in order to execute a search warrant. In fact, prompt entry without an attempt to locate an occupant is probably "reasonably necessary" in the great majority of cases. When the officers do not know where the occupant is, when it would be impracticable or unduly time-consuming to obtain the occupant's presence, or when the search may be jeopardized by even a short postponement, officers with a valid search warrant should be free to enter the premises without delay. Section 808.6 does not require strict necessity or even exigent circumstances, but only *reasonable* necessity.

The majority further states that section 808.6 has been complied with here because the statute merely codifies the common law, and there is no case which holds that officers must attempt to bring an absent owner to the premises before executing a search warrant. Even if one were to assume, however, that the "reasonabl[e] necess[ity]" standard recently added to the statute by our legislature imposes no requirement not imposed at common law, I could not agree that the holding I propose would be contrary to the common law. While it does appear that no case has ever held execution of a search warrant to be invalid under circumstances similar to those in the case at bar, this is because the factual situation involved here has virtually never presented itself in the reported decisions. Research has disclosed only one case in which it appears that an officer executing a search warrant in the absence of the occupant of the premises was aware of the occupant's whereabouts at the time of the entry. In that case, *State v. Gutierrez*, 91 N.M. 542, 577 P.2d 440 (Ct.App.1978), *partially overruled on other grounds, State v. Cervantes*,

92 N.M. 643, 648–49, 593 P.2d 478, 483–84 (Ct.App.), *cert. denied*, 92 N.M. 621, 593 P.2d 62 (1979), the defendant had been arrested and was being transported to her home when an officer with a search warrant broke into her temporarily unoccupied home and then awaited her arrival before conducting the search. 91 N.M. at 544, 577 P.2d at 442. The New Mexico court of appeals held that the search warrant was validly executed. *Id.* at 549–50, 577 P.2d at 447–48. I do not find *Gutierrez* persuasive; furthermore, a single case decided by one state's lower appellate court does not provide adequate authority for the majority's proposition that the common law would mandate an affirmance on the facts before us.

It is true that two federal courts of appeals have held that a search conducted pursuant to a valid warrant in the absence of the occupant of the premises is not *per se* "unreasonable" under the fourth amendment. *Payne v. United States*, 508 F.2d 1391, 1394 (5th Cir.), *cert. denied*, 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975); *United States v. Gervato*, 474 F.2d 40, 44 (3rd Cir. 1973), *vacating* 340 F.Supp. 454 (E.D.Pa.1972), *cert. denied*, 414 U.S. 864, 94 S.Ct. 39, 38 L.Ed.2d 84 (1973). However, the federal cases recognize that whether any *particular* search of vacated premises is "unreasonable" depends on the totality of the circumstances of each case. *See Payne*, 508 F.2d at 1394; *United States v. Agrusa*, 541 F.2d 690, 697–98 (8th Cir. 1976), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977) ("What authority there is holds that unannounced and forcible entries into vacant premises ... are constitutional in the absence of exigent circumstances, *provided that the search and seizure is pursuant to warrant and reasonable under the circumstances.*") (citing *Payne* and *Gervato*) (emphasis added) (other emphasis deleted from original). While the searches in *Payne* and *Gervato* were found to be reasonable under the totality of circumstances, those cases are factually distinguishable from the case before us. In neither *Payne* nor *Gervato* is there any indica-

tion that the officers knew where the occupant was when they began their search.

This court has articulated a similar standard for judging whether a particular search and seizure is unreasonable. The test is "whether the thing done, in the sum of its form, scope, nature, incidents and effect, impresses as being fundamentally unfair or unreasonable in the specific situation when the immediate end sought is considered against the private right affected." *State v. Davis*, 228 N.W.2d 67, 70 (Iowa 1975). I believe this standard has been met under the facts of this case.

I would also note that the United States Supreme Court has recently stated: "It is well established that law officers constitutionally may break and enter to execute a search warrant *where such entry is the only means by which the warrant effectively may be executed*." *Dalia v. United States*, 441 U.S. 238, 247, 99 S.Ct. 1682, 1688, 60 L.Ed.2d 177, 186 (1979) (citing *Payne* ) (emphasis added). Thus, the result I would reach in the case at bar may well be mandated by the fourth amendment, because the officers had a readily available means to effectively execute the search warrant without breaking into defendant's apartment.

There being no reasonable necessity for the forcible entry of defendant's apartment under the particular facts of this case, I would hold that the search warrant was unlawfully executed in violation of section 808.6, and that trial court should have sustained defendant's motion to suppress the evidence obtained in the illegal search.

LeGRAND and McGIVERIN, JJ., join this dissent.

UHLENHOPP, Justice (dissenting).

In this case the inhabitant of an apartment was temporarily away. The first problem I have is whether, under those circumstances, the apartment was "vacated" or "abandoned," as the second sentence of section 808.6 requires. Assuming it was vacated or abandoned, the question is whether the police could enter and search the apartment under their warrant *in the way that they did.*

I visualize three situations. In one situation the police with a warrant come to an apartment, the inhabitant is gone, and the police enter and search. I agree with the majority that police, who are unaware of the whereabouts of an inhabitant, would not be required to look for the inhabitant before entering and searching the apartment under those facts. In a second situation, the police deliberately wait until the inhabitant leaves the apartment and then enter and search it. I think this would constitute an evasion of section 808.6 and be unlawful. In a third situation, some police officers with a warrant go directly to the apartment and enter and search it, and other police officers go to the place the inhabitant is, get her, and take her to the apartment, arriving when the entry and search was complete. In my opinion that is the situation we have here, and it is closer to the second situation than the first one and again constitutes an evasion of the section.

We review these search and seizure cases de novo. *State v. Schrier*, 283 N.W.2d 338, 341–42 (Iowa 1979). The police had been in communication with the estranged husband of the apartment inhabitant. That the second group of police officers just happened to arrive with the inhabitant at the apartment after the first group had completed the entry and search is too coincidental for me to accept.

I would reverse.