**STATE of Iowa, Appellee,**

v.

**Duane Paul McPHILLIPS, Appellant.**

**No. 96–1176.**

Supreme Court of Iowa.

July 1, 1998.

Douglas D. Daggett of Douglas D. Daggett, P.C., Creston, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, and A. Zane Blessum, County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

Defendant, Duane Paul McPhillips, appeals his convictions of burglary, theft, and robbery. *See* Iowa Code §§ 711.2, 713.3, 714.1 (1995). He challenges the trial court's failure to suppress evidence seized pursuant to a search warrant that McPhillips claims was invalid. McPhillips also contends the evidence is insufficient to sustain his convictions. Finally, he alleges he received ineffective assistance from his trial counsel. Finding no infirmity in the proceedings leading to McPhillips' convictions, we affirm.

I. *Background Facts and Proceedings.*

Kenneth Daniel Stark was assaulted in the early morning hours of September 11, 1995, when two intruders broke into the Winterset home he shared with his mother. The intruders robbed Stark at gun point and assaulted Stark with the gun, inflicting a deep laceration on Stark's neck.

On September 24, 1995, an Atlantic police officer contacted the Winterset police department with information about the incident received from Rhonda McPhillips, the defendant's estranged wife. She implicated her

husband and his friend, Scott Haines, in the burglary. On the basis of the information provided by Rhonda McPhillips, the police obtained a search warrant for the defendant's apartment, which he shared with Haines, and for the automobiles of both men. Upon execution of the warrant, the officers recovered clothing matching the description of clothing worn by the intruders as well as a rifle stolen from Stark's house. The officers later retrieved a shotgun that McPhillips had sold to a friend; blood on the gun matched Stark's blood.

Haines confessed to the crime and agreed to testify against McPhillips as part of a plea bargain. The State charged McPhillips with first-degree burglary, *see* Iowa Code § 713.3, assault while participating in a burglary, *see id.* § 708.3, fourth-degree theft, *see id.* §§ 714.1–.2, and first-degree robbery, *see id.* § 711.2.

Prior to trial, the defendant filed a motion to suppress the evidence seized under the search warrant on the basis that (1) the information provided by the informant, McPhillips' wife, was unreliable, (2) the magistrate failed to make the credibility findings required by Iowa Code section 808.3, (3) the information provided by the informant was stale, (4) the applicant for the warrant withheld material information relating to the informant's credibility, and (5) the warrant was not supported by probable cause. The district court overruled the motion. The case against McPhillips proceeded to trial, resulting in a guilty verdict on the burglary, theft and robbery offenses. Sentence was imposed and this appeal followed.

On appeal, McPhillips claims the trial court erred in denying his motion to suppress on several grounds: (1) use of the information provided by McPhillips' wife to obtain the warrant violated the marital privilege contained in Iowa Code section 622.9; (2) the applicant for the warrant concealed material information from the magistrate bearing on the informant's credibility; and (3) the magistrate failed to make an independent determination of the informant's credibility. The defendant also challenges the sufficiency of the evidence to support the jury's verdict. Finally, McPhillips raises an ineffective-assis-

tance-of-counsel claim. Should the court decline to reach the merits of his search warrant challenge, he claims his trial counsel was ineffective for failing to preserve error. McPhillips also contends his trial counsel rendered ineffective assistance in waiving his right to a speedy trial.

II. *Motion to Suppress.*

■ A. *Error preservation.* The State claims McPhillips failed to raise the marital privilege issue in the trial court and therefore has waived any error based on section 622.9. We agree. To preserve error on a trial court's suppression ruling, a defendant must alert the trial court to the specific objection upon which the defendant seeks to exclude the evidence. *See State v. Washington,* 257 N.W.2d 890, 895 (Iowa 1977). A failure to do so prevents the defendant from relying on that objection to obtain a reversal of the court's ruling. *See id.*

■ Here, McPhillips did not mention the marital privilege issue in his motion to suppress or at the hearing on that motion. Therefore, we will not consider it on appeal from his conviction. As a result, McPhillips is left to argue that his trial counsel was ineffective in failing to preserve error, a claim we shall consider later in this opinion. Because error was preserved on the remaining issues raised on appeal in connection with the court's denial of McPhillips' motion to suppress, we will consider those issues now.

B. *Concealment of material information.* McPhillips contends the officer applying for the search warrant omitted material facts from the application that bore on the informant's credibility. This claim implicates Fourth Amendment rights and, therefore, our review is de novo. *See State v. Gogg,* 561 N.W.2d 360, 363 (Iowa 1997); *State v. Niehaus,* 452 N.W.2d 184, 187 (Iowa 1990). We consider all relevant facts and circumstances in deciding whether the defendant has carried his burden to show an intentional or reckless misrepresentation. *See Gogg,* 561 N.W.2d at 364.

■ To successfully impeach the warrant application, McPhillips must establish that the officer "was purposely untruthful with

regard to a material fact in his ... application for the warrant, or acted with reckless disregard for the truth." *Niehaus,* 452 N.W.2d at 186. The officer's conduct must be more than negligence or a mistake. *See id.* at 186–87. The magistrate must be misled "into believing the existence of certain facts which enter into his thought process in evaluating probable cause." *State v. Groff,* 323 N.W.2d 204, 210 (Iowa 1982).

McPhillips does not claim the officer here deliberately falsified the search warrant application. Rather, he claims the officer omitted material information in reckless disregard for the truth. *See State v. Paterno,* 309 N.W.2d 420, 424 (Iowa 1981) (noting a failure to disclose facts can constitute a misrepresentation in reckless disregard of the truth). Reckless disregard can be shown in two ways: (1) proof that the applicant harbored serious doubts about the informant's truthfulness; or (2) showing circumstances evincing an obvious reason to doubt the informant's veracity. *See Niehaus,* 452 N.W.2d at 187. McPhillips contends the circumstances here demonstrate an obvious reason to doubt the truthfulness of his wife's statements.

■ The defendant argues the officer applying for the search warrant omitted the following facts: the informant was angry at McPhillips because of an alleged affair; the informant had been physically abused by McPhillips; and the informant was relieved to learn that McPhillips would go to jail if arrested. At the hearing on the defendant's motion to suppress, the magistrate issuing the warrant testified that she had viewed a videotape recording of the informant's statement to the police. The magistrate was aware the informant and McPhillips were married, but separated. She knew the informant was afraid of McPhillips and was concerned he would take their children to Texas. The magistrate testified that even if she had been informed of the omitted facts, she still would have found the informant credible because (1) the informant was concerned for her personal safety as a result of talking to the police, (2) her statements to two different police officers and her statements on the videotape were consistent, and (3) the officers' investigation corroborated what the informant said.

The record confirms that the information provided by the informant to the police matched the victim's description of the crime and of the assailants. More important, the officers familiar with the crime testified that the informant knew details of the offense that had not been publicly revealed. Finally, the information omitted from the application merely supplied additional reasons to believe the informant would like to see her husband in jail, a conclusion easily drawn by the magistrate from the information that was already included in the warrant application.

Given the strong corroboration of the information provided by the informant and the cumulative nature of the omitted information, we think any omissions by the officer applying for the warrant do not establish obvious reasons to doubt the informant's credibility. Nor is there any evidence that the magistrate was misled by the omissions. Therefore, we agree with the district court's conclusion that the defendant failed to prove the police acted with reckless disregard for the truth in applying for the search warrant.

■ C. *Independent determination of informant credibility.* McPhillips argues the magistrate failed to comply with Iowa Code section 808.3. We review issues concerning the statutory sufficiency of a search warrant for correction of errors of law. *See State v. Myers,* 570 N.W.2d 70, 72 (Iowa 1997).

■ When a magistrate relies on information provided by a confidential informant in determining that probable cause exists for issuance of a search warrant, the magistrate

shall include a determination that the information appears credible either because sworn testimony indicates that the informant has given reliable information on previous occasions or because the informant or the information provided by the informant appears credible for reasons specified by the magistrate. The magistrate may in the magistrate's discretion require that a witness upon whom the applicant relies for information appear personally and be examined concerning the information.

Iowa Code § 808.3. Section 808.3 imposes a mandatory duty on the magistrate to make findings that the informant is credible. *See Myers,* 570 N.W.2d at 73–74. A magistrate's substantial compliance satisfies the requirements of the statute. *See State v. Swaim,* 412 N.W.2d 568, 574 (Iowa 1987).

■ In the present case, the magistrate indicated on the endorsement to the application that she relied in part on information supplied by a confidential informant in issuing the challenged search warrant. She stated the informant appeared credible because "[t]he information provided is not in the best interest of the informant and could result in harm to the informant." The magistrate also indicated on the endorsement that she found the informant or the informant's information credible for the reasons stated in the officer's informant credibility checklist attached to the application. In this attachment, the officer stated the following reasons, among others, for finding the informant reliable: (1) the informant had provided information in sufficient detail that corroborated the statements made by the victim; (2) the informant had not given false information in the past; and (3) the information supplied by the informant was corroborated by law enforcement personnel. Based on the magistrate's endorsement to the application, we think she complied with the requirement of section 808.3 to make an independent finding of the informant's credibility. *See id.* (holding magistrate's reliance on officer's credibility checklist constituted substantial compliance with section 808.3).

■ McPhillips complains, however, that the magistrate should have exercised her discretion to require the informant to personally appear before her and be examined. To show an abuse of discretion, the defendant must prove that the magistrate "exercised [her] discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Maghee,* 573 N.W.2d 1, 5 (Iowa 1997). We find no abuse of discretion in the magistrate's decision not to compel the informant to give a statement directly to the magistrate.

As noted earlier, the informant's statement to the authorities was videotaped and this videotape was viewed by the magistrate, with the exception of a small portion at the very end of the tape.[1] Notwithstanding the magistrate's ability to view the informant and hear her statements, McPhillips argues that had the informant testified in person before the magistrate, the informant's "credibility could have been adequately tested." But McPhillips fails to point out exactly what information would have been revealed by an in-person interview that would have undermined the informant's reliability. Moreover, the magistrate had ample information available to her to make a finding as to the informant's credibility. *See Swaim,* 412 N.W.2d at 574 ("[i]ndependent corroboration of the details of an informant's tip ... may serve as strong support for that informant's reliability"). Therefore, we think the magistrate reasonably concluded it was unnecessary to require the informant to appear personally.

In conclusion, we find no reason to reverse the trial court's decision denying the defendant's motion to suppress. The authorities made no material misrepresentations in the application for the search warrant and the magistrate fully complied with the requirements of section 808.3.

### III. *Sufficiency of the Evidence.*

*A. Scope of review.* McPhillips claims the trial court erred in overruling his motion for judgment of acquittal based on the insufficiency of the evidence. We will uphold the district court's denial of a motion for judgment of acquittal if there is substantial evidence in the record to support the defendant's conviction. *See State v. Rojas–Cardona,* 503 N.W.2d 591, 594 (Iowa 1993), *overruled by State v. Hogrefe,* 557 N.W.2d 871, 879 (Iowa 1996) (overruling on issue of what evidence can prove deception). "Evidence is substantial if it would convince a rational factfinder that the defendant is

---

1. McPhillips fails to identify what was present on the portion of the tape not viewed by the magistrate that would have undermined her assessment that the informant was credible. Therefore, we are not concerned that the magistrate did not watch the entire tape.

guilty beyond a reasonable doubt." *State v. Mitchell,* 568 N.W.2d 493, 502 (Iowa 1997). In deciding whether the evidence is substantial, we view the evidence in the light most favorable to the State and make all reasonable inferences that may fairly be drawn from the evidence. *See State v. Romeo,* 542 N.W.2d 543, 545 (Iowa 1996).

"Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury was free to reject certain evidence, and credit other evidence." *State v. Anderson,* 517 N.W.2d 208, 211 (Iowa 1994). Consequently, unless we conclude the record lacks substantial evidence, "we are bound by the jury's finding of guilt." *Romeo,* 542 N.W.2d at 545.

We review a challenge to the sufficiency of the evidence on assigned error. *See State v. Phams,* 342 N.W.2d 792, 795 (Iowa 1983). Here, McPhillips does not focus on a lack of evidence in support of a particular element of the offenses of which he was convicted; rather, he argues no reasonable fact finder could have found the State's primary witness, Scott Haines, credible. McPhillips argues that, without Haines' testimony, the record lacks sufficient evidence to support any element of the crimes McPhillips was found to have committed. We do not reach the second step in McPhillips' analysis because we conclude a reasonable fact finder could have found Haines believable.

■ B. *Analysis of Haines' credibility.* Haines testified at trial that he and defendant were high on drugs and alcohol in the early hours of September 11, 1995. They decided to drive to Winterset in Haines' car to steal drugs from Danny Stark, from whom Haines had previously purchased drugs. Haines and McPhillips entered Stark's home through the back door and proceeded to Stark's bedroom. Haines wore jeans and had a Hamm's beer box over his head; McPhillips wore a red bandanna and a trench coat to hide a shotgun he held underneath the coat.

Haines testified he heard McPhillips hit Stark and Stark cry out in pain. Haines took a military-type rifle from Stark's closet and some drugs. He and McPhillips then left Stark's house. Haines testified the stolen rifle was eventually put in the trunk of McPhillips' car, wrapped in a blanket. He also informed the jury that he remembered McPhillips later selling the shotgun used in the burglary to Barb Watkins. Haines admitted he pled guilty to third-degree theft in order to get a lower sentence, and that as part of the plea agreement, he promised to testify in McPhillips' criminal trial.

Haines' testimony was corroborated by testimony from other witnesses. Stark testified that he awoke in the early morning hours of September 11, 1995, when he was hit in the mouth with a shotgun. Although the lights were off, he saw two intruders, one wearing a twelve-pack beer box over his head and standing in the hallway, and the other wearing a long coat and bandanna and holding a shotgun. The man with the gun hit Stark in the eye, asked him where his drugs were, and then made him roll over onto his stomach. The same man then hit Stark in the back of the neck with the shotgun, opening a bleeding gash. While Stark was lying on his stomach, the intruders turned on the light and searched his room. They left when Stark's mother made some noise on an upper floor of the house. After the intruders left, Stark discovered an old military rifle had been taken from his room.

Stark's mother also testified at trial. She was awakened the night of the burglary by the sound of a door opening. Upon investigating, she saw two men leave the house. One man wore a long coat and carried a gun over his shoulder. The second man wore jeans.

Officer Stout of the Winterset police department testified that the police found the stolen military rifle wrapped in a blanket in the trunk of McPhillips' car. Another officer testified that the police recovered an empty Hamm's twelve-pack container and a red bandanna from the trunk of Haines' car, and a long trench coat from the apartment shared by McPhillips and Haines. He also stated they obtained a shotgun from Barb Watkins who had purchased it from McPhillips. Tests confirmed that blood found on the shotgun matched the victim's blood.

Barb Watkins testified that Haines and McPhillips were at her apartment late on the evening of September 10, 1995. Both men had been drinking and using methamphetamine. Shortly after midnight they left together in Haines' car. Watkins also testified that she bought a shotgun from McPhillips in August or September of 1995, and that she had not taken it out of its case from the time she purchased it until it was seized by the police.

McPhillips argues Haines' testimony is unbelievable because (1) Haines testified under a plea agreement, (2) Haines initially lied to the police about whether he had used methamphetamine on the night of the burglary and whether they had stolen methamphetamine from Stark's house, (3) Haines regularly used methamphetamine and was under the influence of that drug at the time of the crime, and (4) Haines' testimony was self-serving. McPhillips argues Haines could have put the crime-related evidence in the trunk of McPhillips' car because the trunk did not lock, and Haines had ready access to McPhillips' shotgun and could have borrowed it for the burglary.

We rejected a similar sufficiency-of-the-evidence claim in the *Romeo* case. 542 N.W.2d at 549–50. In that case, the incriminating testimony of two accomplices was instrumental in the defendant's conviction. *Id.* We held it was for the jury to determine whether the witnesses were credible in light of their plea agreement with the State and the inconsistencies in their testimony. *Id.* We noted their testimony was supported by other evidence introduced at trial. *Id.*

Likewise, Haines' credibility was also for the jury to determine. As a review of the record shows, his testimony was consistent with that of the other witnesses and with the physical evidence recovered by the authorities. The trial court did not err in overruling the defendant's motion for judgment of acquittal.

IV. *Ineffective Assistance of Counsel.*

A. *Applicable legal principles.* To support his claim of ineffective assistance of counsel, McPhillips has the burden to prove that "(1) his trial counsel failed in an essen-

tial duty, and (2) prejudice resulted from counsel's error." *State v. Arne,* 579 N.W.2d 326, 328–29 (Iowa 1998). We can affirm on appeal if either element is absent. *See State v. Brooks,* 555 N.W.2d 446, 448 (Iowa 1996). Although ineffective-assistance-of-counsel claims are usually preserved for postconviction relief proceedings, we will consider them on direct appeal if the record is sufficient. *See State v. Spurgeon,* 533 N.W.2d 218, 220 (Iowa 1995). We think the record here is adequate to determine that McPhillips' trial counsel provided effective assistance.

To prove the first prong of an ineffective-assistance-of-counsel claim, the defendant must prove "his attorney's performance was not within the normal range of competence." *Id.* at 219. In determining whether this element of the claim has been proved, we start with a presumption that counsel was competent. *See id.* In addition, we examine the merits of the issue counsel allegedly failed to raise. Trial counsel is not ineffective in failing to urge an issue that has no merit. *See State v. Crone,* 545 N.W.2d 267, 270–71 (Iowa 1996).

B. *Marital privilege.* McPhillips' first claim of ineffective assistance is the failure of his trial counsel to challenge the validity of the search warrant on the ground the application for the warrant was based on privileged information. The defendant claims the marital privilege set forth in section 622.9 precludes his wife from revealing to authorities confidential communications between McPhillips and his spouse. McPhillips has the right to prevent his spouse from violating the marital privilege because the privilege may be claimed only by the spouse who made the confidential communication. *See* 1 Kenneth S. Broun et al., *McCormick on Evidence* § 83, at 305 (John William Strong ed., 4th ed.1992). Consequently, McPhillips' wife could not waive the privilege, if it applied, by voluntarily talking to the police. Thus, the pivotal issue here is whether the privilege applied under the circumstances of this case.

▮▮▮▮ The marital privilege in Iowa is statutory:

Neither husband nor wife can be examined in any case as to any communication

made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal in testimony any such communication made while the marriage subsisted.

Iowa Code § 622.9. For purposes of our discussion, we assume McPhillips' wife was "examined" concerning marital "communications" as those terms are used in the statute. Our focus will center on whether McPhillips' wife was examined "in any *case*" within the meaning of section 622.9.[2]

This court has previously determined in interpreting identical language in a similar statute that a "case" does not include a search warrant proceeding. *See State v. Farber*, 314 N.W.2d 365 (Iowa 1982). In *Farber*, the authorities obtained a search warrant based on testimony given by the defendant's estranged husband at a hearing before the magistrate on the search warrant application. *Id.* at 366. At trial, the defendant moved to suppress the evidence seized during the search on the ground the warrant was invalid. *Id.* She claimed her husband was disqualified from giving information for the warrant by virtue of Iowa Code section 622.7 (1979). *Id.* (This statute has since been repealed. *See* 1983 Iowa Acts ch. 37, § 7.) Section 622.7 prohibited a husband or wife from being a witness against the other "in any case." *Farber*, 314 N.W.2d at 366. We considered whether a search warrant proceeding was a "case": "The statute precludes adverse spousal testimony in a 'case.' A

search warrant proceeding, however, is independent of any criminal case. It is ex parte and nonadversary." *Id.* at 367. We concluded section 622.7 did not apply to a hearing on a search warrant application because such a proceeding was not a "case" within the meaning of the statute. *Id.*

■ We find no reason to interpret the phrase "in any case," as used in section 622.9, any differently than we interpreted the same language in *Farber*. Applying that interpretation here, we conclude the facts before us are even less indicative of a "case" than were the facts in *Farber*. Here, McPhillips' wife did not testify before the magistrate issuing the search warrant, as did the spouse in the *Farber* case. Rather, McPhillips' wife provided information to the police during interviews conducted at the police station prior to the preparation of a search warrant application. If a search warrant proceeding is not a "case," as we held in *Farber*, then certainly the police station interviews of McPhillips' wife did not occur in a "case." *See Livingston v. Commonwealth*, 21 Va.App. 621, 466 S.E.2d 757, 759–60 (1996) (holding spousal privilege, applicable by statute only "in criminal cases," did not apply during pretrial investigation by the police). Like the search warrant proceeding in *Farber*, the investigatory interviews of McPhillips' wife were ex parte, nonadversary, and independent of any criminal case. Therefore, the marital privilege statute does not apply.[3]

2. The parties also disagree on whether Rhonda McPhillips' conversations with the police qualified as "testimony" within the meaning of the second part of § 622.9. *See* Iowa Code § 622.9 ("nor shall they, after the marriage relation ceases, be permitted to reveal in testimony any such communication made while the marriage subsisted"). It is doubtful whether this clause applies here where the marriage relation was still intact at the time McPhillips' wife spoke with the authorities. Nevertheless, assuming the second portion of § 622.9 does apply, we find the statute was not violated. "Testimony is a declaration by a witness in court or during a deposition." *Roosevelt Hotel Ltd. Partnership v. Sweeney*, 394 N.W.2d 353, 355 (Iowa 1986). Private communications in a nontestimonial setting, such as occurred here, do not fall within the scope of § 622.9. *See id.* (holding § 622.10, prohibiting a physician from "giving testimony" concerning confidential communications, did not apply to

private interview of physician by attorney representing party adverse to patient).

3. We are aware a contrary inference could be drawn from Iowa Rule of Evidence 1101(b), which states: "Iowa R. Evid. 501, with respect to privilege, applies at all stages of all actions, cases, and proceedings." Moreover, the following subsection specifically makes the rules of evidence, "*other than [rule] 501*," inapplicable to the issuance of search warrants. Iowa R. Evid. 1101(c) (emphasis added). But when one refers back to rule 501, made applicable to search warrant proceedings by virtue of rule 1101(b), one discovers not a rule on privilege, but rather a statement that "*[n]othing* in these rules shall be deemed to modify or supersede existing law relating to the privilege of a witness...." Iowa R. Evid. 501 (emphasis added). Thus, the rules of evidence contain no substantive law on privileges, but simply make "existing law relating to the privilege of a witness" applicable to "all

Because section 622.9 provides no basis upon which to invalidate the search of McPhillips' apartment and car, his counsel was not ineffective in failing to challenge the warrant on this ground. Consequently, we find no merit in McPhillips' first claim of ineffective assistance of counsel.[4]

C. *Waiver of speedy trial right.* McPhillips claims his trial attorney did not act in his best interests in waiving his right to a speedy trial. *See* Iowa R.Crim. P. 27(2)(b) (setting forth right to be tried within ninety days of indictment). McPhillips was later allowed to withdraw his waiver and was then tried within ninety days of the withdrawal.

 The record shows that the defendant, through trial counsel, originally waived his right to a speedy trial and concurrently sought a continuance of the impending trial date because (1) his counsel had filed several motions upon which the court had not yet ruled and counsel needed a ruling in order to prepare for trial, and (2) counsel required additional time to complete discovery, investigate the facts, and prepare for trial. These are legitimate reasons to support counsel's actions. The desire to obtain more time for the defense to prepare for trial rather than force the State to trial within the speedy-trial period is a strategic decision this court will not second guess. Therefore, we find McPhillips has failed to show his counsel rendered ineffective assistance in connection with the waiver of McPhillips' right to a speedy trial.

V. *Summary.*

The trial court did not err in overruling McPhillips' motion to suppress. There were no material misrepresentations in the application for the search warrant and the magistrate fully complied with the requirements of section 808.3.

The evidence was sufficient to support a finding that the defendant was guilty beyond a reasonable doubt of the offenses of which he was convicted. Any weakness in the testimony of McPhillips' accomplice was a matter to be considered by the jury in weighing the evidence.

Finally, McPhillips has failed to show his trial counsel rendered ineffective assistance. The marital privilege did not preclude the authorities' reliance on information obtained from McPhillips' spouse to obtain the search warrant, and the defendant's counsel had legitimate reasons for his strategic decision to waive McPhillips' speedy trial right.

**AFFIRMED.**

---

actions, cases, and proceedings," including hearings on search warrant applications. Because existing law relating to the marital privilege, § 622.9, does not prohibit the use of marital communications in the situation before us, there is no conflict between our holding in this case and the rules of evidence.

4. In his brief, the defendant also complains of his counsel's failure (1) to renew his objections to the admissibility of the evidence seized pursuant to the search warrant at the time the evidence was offered during trial, and (2) to submit the videotape to the district court for review. Because we find no merit in any of the challenges made to the search warrant, trial counsel was not ineffective in failing to object at trial to the admission of this evidence on grounds that would not have been successful. As for the videotape, McPhillips has failed to articulate what the district court could have seen or heard on the tape, had counsel made the tape part of the trial court record, that would have altered the district court's rulings on the motion to suppress or the court's rulings at trial. Therefore, McPhillips has shown no prejudice from counsel's failure to submit the videotape for the district court's review.