# IN THE COURT OF APPEALS OF IOWA

No. 21-0575
Filed May 11, 2022

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**IVAN DALE KLINGENBERG,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Emmet County, Ann M. Gales, District Associate Judge.

　　Ivan Klingenberg appeals his conviction and sentence for operating while intoxicated. **AFFIRMED**.

　　Martha J. Lucey, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

　　Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

　　Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

Following a bench trial, Ivan Klingenberg was found guilty of operating while intoxicated (OWI)[1] and sentenced to the statutory minimum of forty-eight hours in jail and a fine of $1250.[2]  He appeals.  He asserts there was insufficient evidence that he was under the influence of alcohol to support his conviction, he was denied his right to allocution at sentencing, and the district court erred by delaying a determination of his reasonable ability to pay category "B" restitution.  Before addressing each issue, we will start with a summary of the facts.

## I.     Factual Background

Klingenberg started a fire in his yard that was large enough to catch the attention of his next-door neighbor.  The neighbor approached Klingenberg to discuss taming the fire.  The neighbor was familiar with Klingenberg and his usual demeanor and manner of speech.  Based on her interactions with him, she concluded he was drunk.  She noticed several empty beer cans.  She also witnessed Klingenberg go into his garage to grab a gas can.  When he exited the garage, he stumbled and dropped the gas can near the fire.  The neighbor picked up the can to move it away from the fire and asked Klingenberg if he was okay.  Although he responded that he was, the neighbor noticed that his speech was

---

[1] *See* Iowa Code § 321J.2(1)(a), (2)(a) (2018) (making it a serious misdemeanor to operate a motor vehicle while under the influence of alcohol).

[2] *See* Iowa Code § 321J.2(3) (setting the range of sentences available for operating while intoxicated, first offense).  In addition to imposing only the minimum term of incarceration and fine, the court granted additional leniency by giving Klingenberg the option of fulfilling his incarceration obligation in a weekend offender program and waiving $625 of the fine (the statutory maximum waiver) upon presentation of a temporary restricted license.  *See* Iowa Code § 321J.2(3)(a) (permitting jail time to be served in an OWI program), (c) (permitting waiver of up to $625 of the fine upon presentation of a temporary restricted license to the court).

slurred. Based on her past experience with Klingenberg and her experience as a bartender, she concluded he was "pretty buzzed." She spent about thirty to forty minutes with Klingenberg, during which time she witnessed Klingenberg consume additional beers. After Klingenberg became defensive with her when she offered him some food, she returned to her home. She called the police chief to inform him of her concerns about Klingenberg's intoxication and the size of the fire.

In response to that call, the officer made contact with Klingenberg at Klingenberg's home. There, the officer observed the large fire and interacted with Klingenberg. Based on his observations, the officer concluded that Klingenberg was intoxicated. He based this conclusion on the presence of empty beer cans; Klingenberg's slurred speech; his bloodshot, watery eyes; and his unsteadiness. The officer notified Klingenberg he needed to let the fire die down, and the officer left.

Approximately twenty-five minutes later, the officer witnessed Klingenberg drive a vehicle into the parking lot of a local convenience store. The officer pulled in behind Klingenberg's vehicle and activated the patrol vehicle's emergency lights due to his suspicion that Klingenberg was intoxicated and did not have a driver's license. Upon approaching Klingenberg's vehicle, the officer again observed that Klingenberg had slurred speech and bloodshot, watery eyes. Now that they were away from the fire, the officer could also smell alcohol. When asked, Klingenberg admitted to drinking. Klingenberg submitted to a preliminary breath test but declined to participate in any field-sobriety tests. The officer placed Klingenberg under arrest, took him to jail, invoked implied-consent procedures, and requested

a sample of Klingenberg's breath for testing.  Klingenberg refused to provide a breath sample.

## II.     Sufficiency of the Evidence

As noted, Klingenberg refused to submit to chemical testing to measure his blood-alcohol level.  Without chemical test results, the State was required to prove two elements to establish that Klingenberg was guilty of OWI: (1) Klingenberg operated a motor vehicle; and (2) at that time, Klingenberg was under the influence of alcohol.[3]

Klingenberg only challenges the sufficiency of the evidence as to the second element, claiming the State failed to prove he was under the influence of alcohol.  For Klingenberg to be "under the influence" means (1) his reason or mental ability has been affected, (2) his judgment is impaired, (3) his emotions are visibly excited, or (4) he has lost control of bodily actions or motions to any extent.[4]

We review sufficiency-of-evidence claims for corrections of errors at law.[5] We uphold the defendant's conviction if there is substantial evidence to support the guilty finding.[6] Evidence is substantial if it is sufficient to convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt.[7]  In assessing

---

[3] *See* Iowa Code § 321J.2(1)(a); Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 2500.2 (June 2020).

[4] *See State v. Dominguez*, 482 N.W.2d 390, 392 (Iowa 1992); Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 2500.5.

[5] *State v. Hall*, 969 N.W.2d 299, 304 (Iowa 2022).

[6] *Hall*, 969 N.W.2d at 304.

[7] *Hall*, 969 N.W.2d at 304.

the sufficiency of the evidence, we view it "in the light most favorable to the State, including 'all reasonable inferences that may fairly be drawn from the evidence.'"[8]

Much of Klingenberg's argument on this issue focuses on his claim that the evidence does not necessitate a finding that Klingenberg was under the influence. For example, Klingenberg argues that smelling of alcohol and having bloodshot, watery eyes after being around a fire does not necessarily mean he was drunk. While this may be true, it is an argument appropriately made to the fact finder, not to an appellate court on sufficiency-of-the-evidence review. Our role in a sufficiency-of-the-evidence challenge is to decide whether there is substantial evidence to support the finding actually made, not whether the evidence would support a different finding.[9] Here, the district court, serving as fact finder, determined that Klingenberg was under the influence of alcohol. Following our review of the evidence, we determine there was sufficient evidence to support this finding.

There was direct and circumstantial evidence that Klingenberg consumed alcohol prior to driving his vehicle to the convenience store. Of course, mere consumption of alcohol is not enough to establish being under the influence, but there is more. Two eyewitnesses, both of whom were familiar with Klingenberg's usual manner of acting and speaking, concluded he was intoxicated based on his actions and his slurred speech shortly before he drove. Klingenberg was also unsteady on his feet—on one occasion stumbling as he carried a gas can toward

---

[8] *Hall*, 969 N.W.2d at 304 (quoting *State v. McPhillips*, 580 N.W.2d 748, 753 (Iowa 1998)).

[9] *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010).

the large fire. Klingenberg also showed impaired judgment by carrying the can of gas toward the fire, stumbling, and dropping it near the fire, compelling his neighbor to pick it up to move it away from the fire. He also made a number of statements to the officer that a rational fact finder could conclude constituted admissions of his intoxication. Furthermore, he gave nonsensical replies to questions from and comments by the officer during both interactions with the officer. Finally, Klingenberg refused chemical testing. A rational fact finder could conclude that Klingenberg refused testing because he knew it would provide incriminating evidence that he was under the influence of alcohol.[10]

All of this evidence combined permitted a rational fact finder to conclude that Klingenberg's reason or mental ability were affected, his judgment was impaired, and he had lost control of bodily actions or motions to some extent. Therefore, there is sufficient evidence that Klingenberg was under the influence of alcohol, and his conviction for OWI is affirmed.

## III.    Right to Allocution

Sentencing procedures are reviewed for an abuse of discretion.[11] Klingenberg claims he was denied his right to allocution at his sentencing hearing and this matter should be remanded for resentencing as a result. The State contends that the district court substantially complied with required procedures and, even if it did not, any error was harmless.

---

[10] *See State v. Kilby*, 961 N.W.2d 374, 375 (Iowa 2021) (confirming that test-refusal evidence is admissible in a criminal trial under Iowa Code section 321J.16).
[11] *State v. Craig*, 562 N.W.2d 633, 634 (Iowa 1997).

Iowa Rule of Criminal Procedure 2.23(3)(a) requires the sentencing court to ask the defendant "whether the defendant has any legal cause to show why judgment should not be pronounced." Rule 2.23(3)(d) allows a defendant and defendant's counsel "to address the court where either wishes to make a statement in mitigation of punishment." These requirements are commonly referred to as a defendant's right to allocution.[12] While a defendant has a right to allocution under the rules, the sentencing judge "is not required to use any particular language to satisfy" the rules.[13] Substantial compliance with the rules is sufficient.[14]

The following exchanges took place during the sentencing hearing:

> COURT: Is that the only issue preventing us from going to sentencing at this time?
> PROSECUTOR: Yes, Your Honor.
> COURT: Would you agree, [defense counsel]?
> DEFENSE COUNSEL: Your Honor, it's my understanding my client intends to appeal, and that the only thing standing in the way of appealing would be waiting for your sentencing order, Your Honor.

During discussion of each side's recommendations for sentence, Klingenberg interrupted the court several times to address questions he had regarding his intended appeal and questions regarding the prosecution. After the court answered Klingenberg's questions, the following exchange occurred:

> COURT: That concludes this answer. Is there anything else we need to discuss today?
> PROSECUTOR: No, Your Honor.
> DEFENSE COUNSEL: No, Your Honor.

---

[12] *See Craig*, 562 N.W.2d at 634–35 (addressing allocution under a previous version of the rules of criminal procedure when the rules were numbered 22(3)(a) and (d)).

[13] *Craig*, 562 N.W.2d at 635 (quoting *State v. Glenn*, 431 N.W.2d 193, 194 (Iowa Ct. App. 1988)).

[14] *Craig*, 562 N.W.2d at 635.

Based on the above exchanges, we conclude the district court substantially complied with the requirement that Klingenberg be asked whether he had any legal cause to show why judgment should not be pronounced.  However, we conclude the district court did not substantially comply with the requirement that Klingenberg be given the opportunity to speak in mitigation of punishment.  Klingenberg was not presented with the opportunity to speak personally on matters regarding the sentence being recommended.[15]  Accordingly, Klingenberg was denied his right to allocution.

Nevertheless, we agree with the State's contention that any error was harmless.  Although not directly asked to speak in mitigation of punishment, Klingenberg did have extensive discourse with the court about topics of his choosing.  He was permitted to ask the court questions and speak fairly freely.  Because Klingenberg engaged in fairly free conversation with the court at sentencing, he had opportunity to voice any objections he may have had.[16]  Further, the sentence imposed by the district court was that agreed to by both the State and Klingenberg's attorney—the minimum that could have been imposed for his charge.  Our court has previously noted that the right of allocution is "significantly heightened" in circumstances where the State and defense are proposing vastly different sentences as opposed to "a situation in which the

---

[15] *See State v. Evans*, No. 04-0718, 2005 WL 1521539, at *1 (Iowa Ct. App. June 29, 2005) (noting that the rules require defense counsel and defendant both be given the right to speak in mitigation of punishment).

[16] *See State v. Cason*, 532 N.W.2d 755, 757 (Iowa 1995) (holding because defendant had several opportunities to state any objections to the proposed sentence, any failure by the trial court to formally afford the defendant his right to allocution was harmless).

defendant and the State essentially agree ex ante on the punishment to be imposed."[17]  When his attorney agreed with the State's recommendation for the statutory minimum, Klingenberg again interrupted to ask if he could object.  When asked what his objection was, Klingenberg expressed no disagreement with the recommended sentence.  Instead, he expressed objection to having the same attorney on his forthcoming appeal.  Because Klingenberg was sentenced to the minimum as was agreed to by his attorney and the State, and because he had significant discourse with the court during the hearing, including immediately after his attorney agreed to the State's recommendation, we find that any error was harmless.

## IV.    Timing of Reasonable-Ability-to-Pay Determination

Klingenberg's final claim on appeal is that the district court erred in delaying a hearing on his ability to pay category "B" restitution until after the conclusion of this appeal.  Restitution orders are reviewed for correction of errors at law.[18]

We determine that Klingenberg has waived his claim.  At the sentencing hearing, the district court proposed deferring the determination on Klingenberg's ability to pay category "B" restitution until after the conclusion of his appeal.  In response, all parties—including Klingenberg, both personally and through his attorney—agreed to follow that procedure.  Klingenberg is not permitted to agree to a procedure in district court and then take the contrary position on appeal.[19]

---

[17] *Evans*, 2005 WL 1521539, at *2.

[18] *State v. Gross*, 935 N.W.2d 695, 698 (Iowa 2019).

[19] *See State v. Rasmus*, 90 N.W.2d 429, 430 (Iowa 1958) ("A party to a criminal proceeding . . . will not be permitted to allege an error . . . in which he himself acquiesced, or which was committed or invited by him, or was the natural consequence of his own actions." (second alteration in original) (citation omitted)).

As Klingenberg waived any objection to the district court's decision to determine Klingenberg's reasonable ability to pay category "B" restitution later, we affirm the district court's decision without expressing an opinion about its propriety. After issuance of procedendo, the district court should make a determination about Klingenberg's ability to pay, as agreed by the parties and the district court.

**V.     Conclusion**

We find sufficient evidence to support Klingenberg's conviction for OWI, that any error in denying his right to allocution was harmless, and that Klingenberg waived his ability to challenge the district court's decision to postpone making a determination of his ability to pay category "B" restitution.  As a result, we affirm.

**AFFIRMED**.