Stan T. FENSKE, Petitioner–Appellant,

v.

John THALACKER, Respondent–Appellee.

No. 94–2865.

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1995.

Decided July 17, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 7, 1995.

Paul J. Papak, Federal Public Defender, Cedar Rapids, IA, argued, for appellant.

Thomas D. McGrane, Asst. Atty. Gen., Des Moines, IA, argued, for appellee.

Before McMILLIAN, FAGG, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

An Iowa jury convicted Stan T. Fenske of committing first degree burglary, assault with intent to inflict serious injury, and simple assault, in violation of Iowa law. A panel of the Iowa Court of Appeals reversed the burglary conviction with one judge in dissent, but the Supreme Court of Iowa vacated that opinion and affirmed Fenske's convictions in a unanimous decision. Thereafter, Fenske sought habeas corpus relief in federal district court, *see* 28 U.S.C. § 2254, on the grounds that the state failed to prove all of the essential elements of burglary and that he received ineffective assistance of counsel. The district court[1] denied relief, and Fenske appeals. We affirm.

**I.**

In the early morning hours of June 20, 1990, Stan Fenske, armed with a gun, together with William Weant walked up to a house in Grinnell, Iowa, looking for some acquaintances. Weant testified that Fenske was going there for a "confrontation," "to meet the challenge," or in other words, for a "fight." (Trial Tr. at 133–34.) The house was the residence of Maurine Creamer, a friend of Fenske, and was owned by Creamer's mother. Creamer, however, was out of town at the time of this incident. Fenske and Weant knocked at the door, then entered when no one responded. Michael Bown was asleep on the couch, and Danelle Besco was sleeping upstairs in her room. Besco was residing in the house with Creamer's permission while Creamer was out of town.

Fenske went upstairs and made unwelcome romantic advances toward Besco. After Besco repeatedly told Fenske to leave her alone and to leave the house, Fenske left her alone but did not leave the house. Instead, he went downstairs, threatened to shoot Bown, and then hit Bown several times in the head with the butt of his gun, knocking him unconscious. Fenske was charged with first degree burglary, assault with intent to inflict serious injury, simple assault, and going armed with intent.

At trial, Fenske presented evidence tending to show that he had permission to enter the home. Creamer testified that she had given him permission to check on the house and enter if necessary while she was away. Creamer testified that Fenske had permission to enter on the morning in question and that she had never said he did not have permission. To the contrary, however, the state presented rebuttal impeachment testimony from Bown, who testified that in a telephone conversation after the incident Creamer had told him that Fenske had no

1. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

right to be in the house. The jury convicted Fenske of first degree burglary, assault with intent to inflict serious injury, and simple assault.

Fenske appealed his convictions, contending that there was insufficient evidence to sustain the burglary conviction and that his counsel rendered ineffective assistance by failing to request a limiting instruction for the impeachment testimony offered by the state. The Iowa Court of Appeals reversed the burglary conviction, holding that the state had failed to prove that Fenske had "no right, license, or privilege" to enter the residence, an essential element of burglary under Iowa law. Iowa Code § 713.1. However, the Supreme Court of Iowa vacated the decision of the Court of Appeals and affirmed the burglary conviction, holding that there was evidence on which the jury could reasonably conclude that any permission given to Fenske to enter the house on other occasions was exceeded when he entered the house on this occasion. *State v. Fenske,* 500 N.W.2d 447 (Iowa 1992).

Fenske filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, asserting that no rational juror could have found all of the essential elements of burglary beyond a reasonable doubt and that his counsel rendered ineffective assistance by not requesting a limiting instruction for the state's impeachment evidence. The district court rejected both claims and denied habeas relief. Fenske appeals, raising the same issues he raised below.

## II.

■ Fenske first contends that the evidence at trial was insufficient to establish every essential element of burglary under Iowa law. It is elementary that state law defines the elements of state-law crimes. *Sidebottom v. Delo,* 46 F.3d 744, 758 (8th Cir. 1995). Iowa law defines burglary in relevant part as follows:

Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public. . . .

Iowa Code § 713.1 (1989). Fenske contends that the state failed to produce sufficient evidence that he had "no right, license or privilege" to enter Creamer's house on this occasion, which is an essential element of burglary. *Id. See State v. Franklin,* 368 N.W.2d 716, 718–19 (Iowa 1985).

■ Under Iowa law, the "no right, license or privilege" element of burglary is satisfied when the perpetrator enters a home without consent of the occupant. *See Franklin,* 368 N.W.2d at 718–19. *But cf. State v. King,* 344 N.W.2d 562, 563 (Iowa Ct.App.1983) (no burglary where, although perpetrator entered without consent, the residents acquiesced to his presence and "never told him or inferred that he should leave the house"). It is the task of the Supreme Court of Iowa, not this court, to determine and define the scope of the Iowa burglary statute. Our role is limited to viewing the evidence in the light most favorable to the verdict, including all reasonable inferences to be drawn therefrom, and determining whether any rational trier of fact could have found every essential element of the crime, as defined by Iowa law, beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ As the Supreme Court of Iowa noted, the testimony concerning the scope of Fenske's permission to enter Creamer's home was conflicting. Creamer testified that she had given Fenske permission to check on the house while she was away and even to enter the house if necessary for that purpose. Creamer also testified that Fenske had permission to enter on the morning of this incident. However, Creamer also testified that she had given Besco permission to live in the house and had told Besco that Besco was in charge of the house while she (Creamer) was away. The evidence further showed that on the morning of the incident, an armed Fenske came to the house looking for an individual and looking for trouble, not to check on the house. He knocked, but entered the house after hearing no answer. Besco, who thought she had locked the door before going to bed, testified that she did not give Fenske permission to enter.

■ The jury must determine the credibility of witnesses and the weight to be given their testimony. *See State v. Robinson,* 288 N.W.2d 337, 341 (Iowa 1980). The jury here was free to believe Besco's testimony that Besco was in charge of the house and that she had given Fenske no right to enter. Likewise, the jury was free to disbelieve or to attach less weight to Creamer's contrary testimony about the scope of Fenske's authority. Even if the jury believed Creamer's testimony that Fenske had permission to enter to check on the house, it was free to believe Weant's testimony that Fenske went to the residence that morning for a fight. This permits the reasonable inference that Fenske did not enter for the permissible purpose of checking on the house.

The Supreme Court of Iowa found that Fenske's conduct fit within the Iowa burglary statute, and we are not prepared to give the statute a meaning rejected by that court, as Fenske would have us do. Viewing the evidence at trial in the light most favorable to the verdict, we conclude that a rational juror could have found beyond a reasonable doubt that Fenske either had no right, license, or privilege to enter or that he exceeded the scope of his right to enter on the morning of this incident.

■ Fenske's second contention is that his trial counsel rendered ineffective assistance. To establish ineffective assistance of counsel, a criminal defendant must demonstrate that counsel's performance was deficient and that the deficient performance actually prejudiced the defense to the extent that there is a reasonable probability that the result at trial would have been different absent the deficient performance. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Dodd v. Nix,* 48 F.3d 1071, 1073 (8th Cir.1995). The prejudice component of *Strickland* focuses on "whether counsel's deficient performance renders the result at trial unreliable or the proceeding fundamentally unfair." *Lockhart*

*v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993).

Fenske asserts that the state's rebuttal impeachment testimony—Bown's statement that Creamer told him Fenske had no right to be in the house on the morning of this incident (offered after Creamer denied making any such statement)—was inappropriately used as direct evidence that he had "no right, license, or privilege" to enter. Fenske argues that the state produced no other evidence on this essential element of the crime, and therefore, his counsel's failure to limit this testimony to its proper use resulted in prejudice to the defense. We disagree.

■ The general rule in Iowa is that a prior inconsistent statement made under oath at a prior trial, hearing, or deposition is admissible for the truth of the matter asserted. *See* Iowa R.Evid. 801(d)(1)(A). Extrinsic evidence of an unsworn prior inconsistent statement is likewise admissible (after giving the witness an opportunity to explain or deny the statement) but only to impeach the witness and not as substantive evidence of the fact asserted. *See* Iowa R.Evid. 613(b). *See also State v. Schatz,* 414 N.W.2d 840, 842 (Iowa Ct.App.1987); *State v. Oshinbanjo,* 361 N.W.2d 318, 322 (Iowa Ct.App.1984). In this case, the extrinsic evidence of Creamer's unsworn prior inconsistent statement was proper impeachment evidence under Rule 613, but it was not admissible as substantive evidence that Fenske had no right to enter the house.

■ Fenske's counsel failed to request a limiting instruction directing the jury to use the testimony alleging Creamer's inconsistent statement solely to assess Creamer's credibility. Additionally, Fenske claims his counsel was ineffective for not objecting to Instruction No. 28.[2] Instruction No. 28 by its very terms does not apply to Creamer's alleged inconsistent statement because her statement was not made while she was under

---

**2.** Instruction No. 28 provided as follows:
You have heard evidence claiming witnesses made statements before this trial while under oath which were inconsistent with what the witness said in this trial. If you find these statements were made and were inconsistent,

then you may consider them as if they were made at this trial. Decide whether to consider the earlier statement for any purpose and what weight to give them.
(Appellant's Br. at 15.)

oath. Instruction No. 28 was correctly given because Besco, Weant, and Bown had all made some prior statements while under oath that could be construed as inconsistent with their trial testimony. Consequently, the only viable allegation of ineffective assistance Fenske makes is that his counsel failed to request a limiting instruction about Creamer's alleged prior inconsistent statement.

 Assuming without deciding that Fenske's counsel's failure to request a limiting instruction is deficient performance in the *Strickland* sense, we conclude that the defense suffered no actual prejudice. There is no reasonable probability that the result at trial would have been different had Fenske's counsel requested a limiting instruction. Creamer was first given an opportunity to explain or deny the prior statement so it was available to impeach Creamer's credibility, a use to which the jury probably put it.

More importantly, and contrary to Fenske's assertion here, the substance of the rebuttal testimony was not the state's only evidence that Fenske had no right to enter the house. As demonstrated above, the evidence showed that while Creamer was away, she left Besco in charge of the house and gave Besco permission to reside in the house. Besco testified that she did not give Fenske permission to enter and, in fact, she told him to leave. Thus, even if a limiting instruction had been given, the prior inconsistent statement, if believed by the jury to have been made, would have undermined Creamer's credibility, and the jury still would have been free to believe Besco's testimony instead of Creamer's. Furthermore, as we concluded above, even crediting Creamer's testimony that Fenske had the right to enter for the purpose of checking on the house, there was sufficient evidence for a jury to find that Fenske exceeded the scope of that right when he entered on the morning of this incident.

Because we conclude that the evidence supports a conviction of burglary under Iowa law, even without considering Creamer's prior inconsistent statement, and that the prior statement was admissible, counsel's failure to request a limiting instruction did not render the result at trial unreliable or the proceeding fundamentally unfair. Fenske's claim of ineffective assistance of counsel, therefore, does not provide a basis for habeas corpus relief.

## III.

We conclude that there was sufficient evidence on the "no right, license or privilege" element of burglary under Iowa law to convict Fenske, and that Fenske's trial counsel did not render ineffective assistance. Accordingly, we affirm the judgment of the district court.